on behalf of the defendant Thomas Tanke. I'm intending to reserve three minutes for rebuttal. That's fine. Nobody ever does whatever they say they're going to do, but go ahead. It's harder than it sounds in the beginning. The first claim here is that the evidence is insufficient to support the verdict on count 2, mail fraud, which involved a mailing on September 16, 2004, that was charged as being alleged as being in furtherance of the fraud scheme. Now, this is your concurrent sentences, and I mean, I understand that you're being a good lawyer, but in the end, it's perfectly possible it's just got the same sentence. Right? I think that's right. I think that under the general rule of the sentencing package doctrine is that if one count is vacated, the judge is – it vacates the whole package and the court can go on. I'm sorry? Under the sentencing package doctrine, if one count or more counts is vacated, the court really reconsiders the whole sentence. I understand that. But you're right. It might not make it – I don't think it would affect the guideline range at all. Okay. Go ahead. The black letter law here is that the mailing must be incident to execution of the scheme rather than part of an after-the-fact transaction, not in furtherance of the scheme. And the claim here is that – Does the scheme have to be conceived of at one moment, or can it be conceived over a time period, or what? Well, I think it can't be conceived after the fraud is completed. I think it is true that the scheme may not be conceived at one particular moment. But in this case, the fraud scheme ended in, in our view, no later than June of 2004 when all the proceeds were obtained by Mr. Tankey. And that's both – Isn't it also fraudulent to tell a lie to somebody who would otherwise be collecting the – coming after you to get the money back? That may be some kind of criminal offense. But in this case, the fraud, I think, as the scheme was devised, was to write checks for personal expenses and to divert checks into an account he controlled. Now, it's probably true in every case that it somewhat falls into the Grunewald opinion that the court issued an order that after the fact, if someone confronts you with a completed fraud, that you – a fraudster would typically or may deny the conduct or come up with some further excuse for the fraud. But in this case, I think the fraud ended in June 2004, no later than August 2004. Why the time limitation? I'm having trouble with it. It seems to me a person who commits fraud, there's two things they want to do. I want to get through the fraudulent transaction, and I don't want to get caught. And the Third Circuit has a case that sort of reads in that direction. Why doesn't that make sense? Why is the time limitation so important when it's just logical that a person who commits fraud, in addition to getting the money in the fraudulent, doesn't want to be caught doing it, whether it's this month or next month? Well, I mean, it's true that you wouldn't want to be caught ever. But I think under this Court's authority, the low decision and the Supreme Court's authority, like the Mays decision, the cases talk about that the mailing has to be in furtherance of part of the scheme as it was designed at the time of this scheme. Designed at the time? Well, the design at the time was I'm going to commit fraud and not get caught. I'm troubled by the time limitation. Three months later is okay, but six months later isn't. Why? I was impressed by the Third Circuit that had a little different approach to it. Well, in this case, with respect to that timing issue, after all the funds were obtained in June of 2004, in August of 2004, Rafael Martin sent an e-mail to Thomas Tankey asking him about a missing check and where it was. And Mr. Tankey's initial response was, I don't have that check. Now, that was on August 5th, 2004. And September 16th, 2004, the one mailing in question, then he gives another story and it's a letter to Rafael Martin requesting payment for past due invoices and suggesting that any funds that he had received were in payment for past invoices. But the August 5th, 2004 letter makes it kind of clear that he didn't have any kind of concealment plan or that any further letters were at the time, any additional letters were in furtherance of the scheme because when he was first contacted and asked about a missing check, he says, I don't have that check. And so I think in some cases, a mailing can be in furtherance of the scheme or in concealment if it was designed as part of the scheme initially. But in this case, it's clear that it's not. Well, the indictment that I don't think you challenged alleged that all of this was part of the scheme. So in these other cases, it's not clear that the indictment framed it in those terms. Here, it was specifically set up in the indictment that the September 16th letter was indeed part of the scheme. And that's the way it went to trial without challenge to the sufficiency of the indictment. And in terms of Grunewald, which is a conspiracy case, not a mail fraud case, I don't recall that you pushed that argument. That was something that we raised because there is a lot of discussion in Justice Harlan's opinion about cover-up being different from the original scheme. Well, on the first point, that is correct that we did not challenge, the defense did not challenge the indictment. What we have challenged is that the sufficiency of the evidence supporting the indictment. The indictment with respect to count two in the letter does not give a specific theory on why that mailing is in furtherance of the scheme. It just alleges, as indictments typically do, that it's in furtherance of the scheme to defraud. But in our briefs, we – I have argued, even before the Court's order on the Grunewald opinion, that this Court's authority and the Supreme Court authority in Lowe require that a mailing that is for the purposes of concealment must be in furtherance of the scheme at the time the scheme was originally designed. And the Grunewald opinion, which is a – Sotomayor, are you getting the at the time it was originally designed? I mean, the language in the case is a little murky about that. I mean, it says it has to be part of the scheme as planned, but it doesn't say as planned when, does it? Well, the Lowe opinion that I'm quoting says the mailing can occur after the defendant obtained the fee if the mailing is part of the execution of the scheme as conceived by a perpetrator at the time. At the time? At what time? At the time that she – she – I mean, you're assuming it means at the time that she made up the scheme at the outset rather than at the time she did the mailing. Well, I think in the context, especially because that quote is quoting Schmuck, I believe, that it occurred – it refers to at the time of the – at the time of the scheme to defraud, not like some after – not the time of the mailing. Because that would – it would be kind of superfluous to put in at the time unless it was referring to kind of a prior time. No, because it has to be part of the scheme at the time that it is done. And this – you know, I mean, I have a hard time not seeing Judge Wallace's point, that is, that – that – I mean, unless this guy was entirely deluded, presumably he – he didn't think when he did all this that nobody was ever going to notice it. He had some notion that – that he would do something if somebody noticed it. Well, and probably would have denied, like he did initially, August 5th, denied taking the check. That was the thing. Right. But, you know, the Grunewald opinion, I think, is – is helpful by analogy. It is a conspiracy case rather than a mail fraud case. But I think the same general concept is – is within the principles of the mail fraud case, Lowe and Mays and the other Supreme Court cases, that the – the concealment – the act must be a concealment, must be done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after the central objectives have been attained for the purposes of covering up after the crime. There's a vital distinction between the two. And I think the same distinction is made here, that in a case – in the Grunewald opinion gives an example of a kidnapping where a kidnapper is waiting for a ransom. That is a – there may be some concealment acts as part of the conspiracy. Or if you are going to paint a stolen car after you stole it, well, that's kind of part and parcel of the crime of – of car theft. But it's a different type of a situation where you just deny committing the conduct and then later on after the fact, another month later, you give another – a different version of the story. He wrote the letter. He – this was a crime of embezzlement, is that correct? Yes, essentially. Okay. And so at the time he wrote the letter, he had left employment, is that correct? That's correct. So he was no longer in a position to commit acts of embezzlement. That's – that's correct. Okay. So – and the – your point is that the conspiracy was to embezzle – I mean, the fraud was to embezzle and that he had completed the embezzlement and then later in September he wrote a dissembling letter of false allegations. But that was a separate act of fraud. And it was – it was after the fraud was discovered. It was after he had written an August 5th letter that he didn't have the checks. So it was – there's a kind of a distinction both in time as well as quality. Well, it was after the fact that the money was – had been diverted was discovered. But he was still trying to avoid – avoid the conclusion that it was fraud. Right. I'm going to save my remaining time. Could I ask you a question? I'd like to have you comment on – I didn't – are you familiar with this Hoffman case in the Third Circuit? I am not. Well, it's – it says, Malings made to conceal either the existence or the true nature of a criminal scheme fall within the ambit of Federal prohibition against mail fraud. The close relationship of Malings to the scheme does not turn on time or space, but on the dependence in some way of the completion of the scheme or prevention of its detection on the Malings in question. That's the Third Circuit position. I take it you would disagree that we should adopt the Third Circuit? I think I would disagree, but I think I would also say that my primary argument is not a time distinction. And from what I heard from that passage, it may not be inconsistent with my argument on the Ninth Circuit law, on Lowe and Mays, that the mailing has to be in furtherance of part of the fraud scheme as it was conceived before it was completed. Yes. Their wording is the completion of the scheme or the prevention of its detection. That's the Third Circuit's approach. That is, it's all together. Well, I guess my position was I don't think it should extend that far into prevention of detection could be raised the same kind of problems of Grunewald that could basically be extended indefinitely. Well, tell me why. Tell me why. What you're saying is let's cut it off with a cleaver at the very end and not worry what happens next. But doesn't logic show that prevention of detection is a part of the scheme? Why wouldn't logically, if it's within the ambit of generally what's happening — it's not years later, it's something that came up dealing with the initial fraud — why wouldn't that be connected? I just want to know your reasoning on it. Well, I... You might cite Justice Harlan and Grunewald. That would be my answer there. Since he rather elaborately explains it. Do you want to adopt Judge Fisher's comments or would you like to modify them? Yes, I would adopt Judge Fisher's comments. Are you going to share your fee with him? I think he said it as eloquently or better than I could say. Okay. Thank you very much. We will give you a couple minutes in rebuttal as you try to save them. Good morning, and may it please the Court. Robert Tice Raskin on behalf of the United States. I'll start with the mailing question, if the Court so pleases. And can I help frame the argument? Grunewald is a conspiracy case, but nonetheless, the two issues that the Court is concerned with, that Justice Harlan was concerned and was quite eloquent about it, and seems to have rejected the very argument that you're advancing in this case that was made by the government in that case, which is there's always implicit in a fraud scheme the notion that you don't want to be detected. That just goes, it's just there. And, in fact, the argument was made, well, there's an implicit concealment aspect to every conspiracy. And Justice Harlan says if you adopt that theory, if you adopt the government's theory, then the government can essentially extend the statute of limitations so that there's never an end to the crime, because avoidance of detection can go on indefinitely. And secondly, and this is not relevant to the mail fraud case, but in the conspiracy, it also extends the time at which the conspiracy is operative and, therefore, gets around the hearsay rule, because statements made in furtherance of the conspiracy. So I juxtapose Justice Harlan's eloquent statements, analyzing the difference between what Hoffman in the Third Circuit said, what then-Judge Breyer said in the Fourth Circuit, about sort of it's all part of the scheme to avoid detection. And you look at Justice Harlan's opinion, and he seems to give the lie to that. There are cases that also go the other way. Young, for example, I think may be one. But there are cases that say if you have a separate act of concealment, then you have to indict and charge that as a separate act, as a second fraud. In this case, you or the government incorporated the act of concealment as part of the original scheme. And given the facts of this case, that the embezzlement, clearly it ended, because he was no longer in a position to embezzle once he left the employment, the September 16 letter seems to be quite plainly on its face an act of concealment that he undertook once he had completed the embezzlement. So when you argue, I just ask you to explain why Justice Harlan's rather extended analysis doesn't, as a matter of Supreme Court law, require us to move in that direction rather than, for example, adopting the Third Circuit's explicit provision that you can include acts of to avoid detection. Just by way of context, Your Honors, I did want to make clear that the last check was issued as part of the scheme, cleared on, excuse me, on July 26, 2004. So this September mailing was 52 days later. So we're not dealing with a situation where months or years after fraud proceeds have been obtained, there has been an act of concealment. It's much closer in time. But to address the Court's question as to whether the doctrine announced in Grunewald should apply in this context, I don't think that the Court is writing on a clean slate here. I think the answer is the Supreme Court's decision in Lane in 1986. Grunewald, and I understand Judge Harlan's concerns in Grunewald, but the Grunewald decision has been, is a line of jurisprudence that relates to the law of conspiracy, and it's to limit the possibilities of unlimited conspiracies not subject to the statute of limitations. The Supreme Court, however, has taken a different path in connection with the substantive fraud law, mail and wire fraud. And Lane and its progeny expressly held that mailings after the receipt of fraud proceeds can be deemed in furtherance of a scheme if they are designed to facilitate concealment of the scheme. And the Supreme Court does seem to recognize that there are two possible concealments. There are concealments that allow the perpetuation of the ongoing fraud, and there are also concealments that just conceal the overall crime. I'd suggest to the Court, however, that the Supreme Court, as well as this Court, has indicated that both concealments can be deemed to be appropriate mailings in furtherance of the crime. And, indeed, the mail fraud crime becomes complete only after the mailing is effectuated. I'd point out to the Court that two circuits have discussed this distinction between application of what I'd call the Grunewald conspiracy rule and the Lane jurisdictional rule. And just so the Court has those opinions, if it wishes, it's the Rogers opinion out of the Second Circuit in 1993, that's at 9F3rd.1025. It's likewise discussed by the Sixth Circuit in Grenoble in 2005. The citation there is 413F3rd.569. I'd suggest that the Rogers decision is particularly illustrative. Kennedy, what circuit was that? The Second Circuit, both outside this circuit, of course. No, that's okay. But in Rogers, a scheme to defraud, it was a credit line scheme. It was charged as both a conspiracy to commit wire fraud and substantive wire fraud. And there the defense challenged lulling letters that issued after funds had already made their way to the defendants. It strikes me that this is somewhat different and more truncated from the central scheme than the lulling letters in Lane and the lulling letters in Rogers. In the sense that the lulling letters, as I understand it, were essentially they were part of the scheme in the sense that they were telling the victims that they were still going to get their money and nothing was wrong. And so that's why they were lulling letters. This was sort of a different thing. It was a separate set of lies having, which weren't suggesting that the money was ever coming back to him, or and instead indeed were threatening and seemed to be an attempt to get him not to expose the fraud rather than being part of the fraud. Separate fraud. And so that's what I'm trying to get at in this case, is that there was an attempt  Roberts. Kagan. Focusing, there were a lot of attempts by the defendant to try to. But we're talking about this one letter, the September 16th letter. Right. Focusing on the September 16th letter. I think, did it include threats in it or not? That letter had an implicit threat. Right. There were other letters that expressed threats. It preceded by threats, right? Yes, indeed. So it's not simply telling him everything's going to be all right. It's in fact telling him everything isn't going to be all right. I would deem that to be a cover letter and quasi-lulling in this respect. I think the jury could permissibly infer there were multiple objectives. First of all, I can't agree with counsel that the entire fraud was known to Raphael Martin, the victim, as of August. As of that date, he was only aware of one check for approximately $33,000, and there's no indication in the record that he was aware of the $180,000 fraud. So one purpose of that letter on September 16, among others, would have been to conceal the entirety of the fraud from the victim, and in that sense is a lulling. A second purpose that the jury permissibly could have found was that it was to conceal the crime in its entirety from law enforcement. A third purpose that the jury permissibly could have found was that it was an attempt to dissuade Martin from affirmatively initiating action to recover the funds. A fourth purpose that the jury could have permissibly found was that this was an attempt on Tanque's part to dissuade Martin from going to law enforcement, and in that sense lulling him into inaction. Kagan. I was trying to draw, though, and perhaps it's somewhat inarticulate, was between something that appeared to be part of the scheme, i.e., somebody writes and says, you know, where's my money, and you write back and you say, oh, it will be coming, and you're not – you're not directly trying to – you're simply trying to drag out the scheme. And that's sort of not what's happening. All the examples you gave of what he was trying to accomplish were really, essentially, not to get – not to get the police involved and not to get charged with it. They weren't to continue the scheme in the way the scheme had been continuing. I would suggest to the Court that the scheme as originally conceived, and indeed the trial evidence, was that the defendant had an objective, the objective being not only to divert these funds, but to hold on to them, to hold on to them for as long as he can, and when confronted, any way he could, try to wiggle out of his responsibility for it. Kagan. But you actually have absolutely no evidence of that. I mean, maybe this is where the evidence problem comes in. You have absolutely no evidence that he conceived of this. He worried at all at the outset about what was going to happen if it was discovered, as opposed to just flew by the seat of his pants once it was discovered. Actually, no, Your Honor, because I would point the Court to the way in which the defendant purposefully tried to conceal, for example, the Azteca checks. Remember that at the time that the defendant was having checks, either he himself or was having others draw up checks to pay his creditors, such as Audi and the like, he engaged in a whole series of purposeful, deceptive actions to conceal what he was doing. For example, rather than have the checks. That's true, but that's separate from what would happen if the concealment didn't work. It is, however, evidence during this course of the scheme to defraud that one of the defendant's objectives was not only to get the money, but to conceal its the fraud's discovery and responsibility for it. In short, as far as the mailing is concerned, Your Honors, I would say that the defraud I do believe that the September 16 letter was indeed incident to an essential element of the scheme. It was a step in the plot. There are many permissible inferences that the jury could and I would suggest to you did make in concluding that that was an appropriate mailing. Suppose there was a letter that surfaced dated August 1st in which he said, oh, my goodness, he's discovered this. I don't know what to do. I'm going to have to figure out something. And then he went ahead and did exactly what he did. And so I'm sorry, the substance of the letter was? It's a letter to his wife or something. He said, oh, my goodness, they've discovered the fraud. I don't know what to do. I haven't thought about this. I'm going to have to figure something out. And then he does it. This is a letter the defendant sends to his wife. Yeah, yeah. I'm just saying, suppose we knew that he had not figured this out before. He was just making it up on the fly. That type of letter, Your Honor, I think a jury could permissibly conclude wasn't part of the execution of the scheme. It wasn't in furtherance of it. And I'm not talking about the letter being part of the scheme, it's about the things that happened afterwards. And then he wrote the September 16th letter, but we know that he made it all up after the last fraudulent check was diverted. I'm afraid I still don't have it. In other words, what I'm trying to say is we know that he had no scheme of any specificity until after the last check was diverted and he became scared that it was all going to be revealed. We know it's not. Does your argument depend on the fact that he had some kind of a scheme or just that he didn't want to get caught? Is it sufficient that you just assume that he didn't want to get caught, so anything that he did afterwards to not get caught counts? Not just anything. I think that the jury must find that that act of concealment was somehow in furtherance of the fraud as originally conceived. But it doesn't have to be that he conceived of how he was going to cover it up. No. And there is an important ancillary point that I did want to make sure and bring to the attention of the Court. I know that defense counsel has suggested that the government failed to offer evidence that the September 16 letter was designed or formulated at the same time of the original scheme to defraud, and seems to suggest it's required by Lowe and Sampson. The government cannot agree. All we need to demonstrate is that there was a scheme and that the mailing was part of the execution of that scheme. And I just don't think that's the case. And that's what I was trying to get at with my hypothetical. So it doesn't matter whether he had any plans at all about how he was going to cover it up at the outset or even in the middle. It doesn't. The required nexus is that that concealment is in furtherance of the scheme as conceived. And indeed, the Lowe court, specifically in footnote 3, said that it's immaterial that that defendant did not herself specifically plan the mailing. Is it the Court's desire that I comment upon either of the enhancements? We are about out of time anyway, so not particularly. You made two confessions of error. That's fine, but it seems to me that the issue was not error, but plain error. In order for the government to be fully straightforward on what you're doing, I assume that you meant a confession of plain error. The Court speaks of the restitution amount, and it would be plain error. So when you say confession of error, we can assume that's plain error? Yes, Your Honor. And it is the government's request that there be a limited remand solely for the purpose of correcting the restitution and indicating on the judgment that he had just made. I understand. I'm just trying to tie the knot, because it's plain error which is the test, and that's the confession you have to make. And you're now making it. Indeed, Your Honor. Thank you very much. You will have two minutes. I just really want to make one final point. If the government's position is correct that any act of concealment even years later could be sufficient under the mail fraud statute. Well, they didn't say even years later. They pointed out this was not years later. But I think their argument would extend to even years later. And in this case This was actually within the period that was alleged in the indictment. Well, the the the the the in the indictment alleges that the conspiracy was from April 2002 to August 2004, and then it says that this letter in September 2004 is in furtherance of that conspiracy. It doesn't run through September 2004, the indictment? The indictment. On page, except for the record, too, says that the scheme of the defraud begins not later than October 2002 and continues up to and including August 2004. And then when it goes to mailings and count to accept the record page for its specifically says that count to occurred on September 16th for the point I was going to make is that in this case is a is a good example of why the Grunewald rule or its principles should be applied in the mail fraud context as well. Because if Mr. Tanky had submitted a mailing in connection with a bankruptcy petition that that as TECA filed years later, 2006. If he submitted in 2008, it would be considered sufficient under the government's view as part of a concealment or denying responsibility of the fraud to extend the statute of limitations even greater where the government could then file an indictment even earlier this year to go back to the conspiracy, the fraud charge that was alleged in this indictment. If this conspiracy, in fact, does continue on for years, then you have no objection to it. If there's a broad fraud scheme. Yes, it continues on for years. You have no objection to it. So the issue is whether the cover-up part is a new conspiracy. If the cover-up part is part of the other conspiracy, the time argument. I think that's true. Yeah. Okay. Thank you. I understand your point. Thank you very much. Thank you. We thank the parties for their arguments in United States v. Tanky, and we go to the last case of the day, which is Stockwell v. City and County.
judges: Wallace, Fisher, Berzon